**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

SPENCER AARON MCMILLEN,

        Plaintiff,

    v.

GENERAL MOTORS LLC,

        Defendant.

Case No.  5:26-cv-00032-BLF

**ORDER DENYING MOTION TO REMAND**

[Re: ECF No. 16]

Before the Court is Plaintiff Spencer Aaron McMillen's motion to remand.  ECF No. 16 ("Mot."); ECF No. 21 ("Reply").  Defendant General Motors LLC ("GM") opposes the motion.  ECF No. 20 ("Opp.").  The Court heard oral argument on March 12, 2026.  ECF No. 26.  After the hearing, the Court ordered the Parties to file supplemental briefing on the issue whether removal was timely.  ECF No. 29; *see also* ECF No. 31 ("Pl. Supp."), ECF No. 32 ("Def. Supp.").

For the following reasons, the motion is DENIED.

## I.    BACKGROUND

This dispute arises out of Mr. McMillen's purchase of a 2021 GMC Sierra 1500 (the "Vehicle").  *See* ECF No. 1-1 ("Compl.") ¶¶ 6, 9.  Mr. McMillen alleges that the Vehicle was defective and that GM failed to fulfill its warranty obligations.  *Id.* ¶¶ 12–14.

On August 29, 2025, Mr. McMillen filed the complaint in Santa Clara County Superior Court, alleging claims under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790.  *See* Compl. ¶¶ 6–33.  In the complaint, Mr. McMillen seeks damages, restitution, civil penalties, prejudgment interest, and attorneys' fees and costs.  The complaint does not allege the Vehicle's purchase price or any other dollar amounts for statutorily required deductions.

*United States District Court*
*Northern District of California*

Mr. McMillen served GM with the state court complaint on September 3, 2025, and GM filed its answer on October 3, 2025. *See* ECF No. 16-1 ("Plata Decl.") ¶¶ 5–6. On November 7, 2025, Mr. McMillen furnished a copy of the sales agreement to GM pursuant to state law. *Id.* ¶ 7; *see also* ECF No. 20-1 ("Kramer Decl.") ¶ 2. The sales agreement lists the Vehicle's purchase price as $77,870.12. ECF No. 20-2. On December 2, 2025, Mr. McMillen produced the loan payoff letter, which showed a remaining balance of $25,888.83. Kramer Decl. ¶ 4; *see also* ECF No. 20-4. There is no indication that Mr. McMillen produced the Vehicle's repair records after filing the complaint. Rather, it appears that GM reviewed its records and determined that the Vehicle had been brought in for repair at least fifteen times. Kramer Decl. ¶ 3. According to repair records, the Vehicle was first brought in on September 26, 2023, when it had 42,835 miles on the odometer. *See* ECF No. 20-3.

On January 2, 2026, GM removed the case based on diversity jurisdiction. ECF No. 1. Mr. McMillen moved to remand on February 2, 2026, asserting that GM's notice of removal is defective because it (1) is untimely under 28 U.S.C. § 1446 and (2) fails to establish the amount in controversy exceeds $75,000. Mot. at 4–10. At the hearing, counsel for Mr. McMillen conceded that the jurisdictional minimum has been satisfied.

## II.    LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They may adjudicate only those cases that the Constitution and Congress authorize them to adjudicate, such as those involving diversity of citizenship or a federal question, or those to which the United States is a party. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006).

"The mechanics and requirements for removal are governed by 28 U.S.C. § 1446." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013). "Section 1446(b) 'identifies two thirty-day periods for removing a case.'" *Id.* (quoting *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 885 (9th Cir. 2010)). A notice of removal must be "filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief." 28 U.S.C. § 1446(b)(1). The Ninth Circuit has

2

explained that for the first thirty-day removal period to apply, "the ground for removal must be revealed affirmatively in the initial pleading." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 695 (9th Cir. 2005). "The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, and the defendant receives 'a copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained." *Carvalho*, 629 F.3d at 885 (quoting 28 U.S.C. § 1446(b)(3)).

Finally, "a defendant who has not lost the right to remove because of a failure to timely file a notice of removal under § 1446(b)(1) or (b)(3) may remove to federal court when it discovers, based on its own investigation, that a case is removable." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013). The only time limit for the third pathway is that the notice of removal must be filed within one year of the filing of the complaint. *Id*. at 1126; *see also* 28 U.S.C. § 1446(c)(1).

## III.   DISCUSSION

The sole issue before the Court is whether GM's notice of removal was timely. Specifically, the Court must determine whether the sales agreement alone, which Mr. McMillen produced on November 7, 2025, implicated the "other paper" requirement of 28 U.S.C. § 1446(b)(3), thereby triggering the thirty-day removal period. Mr. McMillen contends that the sales agreement (which identifies the Vehicle's price) triggered the removal period and therefore renders GM's January 2, 2026, notice of removal untimely. GM argues that removal was not ascertainable—and the thirty-day removal period did not begin—until Mr. McMillen produced the loan payoff letter on December 2, 2025.

### a.   The Complaint Did Not Trigger § 1446(b)(1)

The first thirty-day period is triggered only where the initial pleading itself contains the facts giving rise to removability, without reference to any information or knowledge in the possession of the defendant. *Kuxhausen*, 707 F.3d at 1140; *see also Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 693–94 (9th Cir. 2005) (explaining that "notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry") The Ninth Circuit has

repeatedly instructed that "defendants need not make extrapolations or engage in guesswork" to determine whether the amount-in-controversy requirement is satisfied. *Kuxhausen*, 707 F.3d at 1140.

It is undisputed that the complaint fails to allege the Vehicle's sales price or any other specific measure of damages specific to this controversy. The Court accordingly has no trouble in concluding that service of the complaint did not trigger the thirty-day removal period. *See Alvarez-Munguia v. Ford Motor Co.*, No. 23-cv-02751-BLF, 2024 WL 69076 (N.D. Cal. Jan. 5, 2024) ("The Court finds that service of the summons and complaint did not trigger the first thirty-day removal period, because the complaint does not allege facts showing that the amount in controversy exceeds $75,000.").

Mr. McMillen nonetheless makes several arguments for why the complaint should have put GM on notice as to the amount-in-controversy requirement being satisfied, including that GM possesses "sophisticated knowledge of the motor vehicle industry," that Mr. McMillen invoked the state court's unlimited jurisdiction in the complaint, and that GM had "sufficient information to plausibly allege satisfaction of the jurisdictional threshold." Mot. at 2, 6–7. None of these arguments is persuasive. *See, e.g.*, *Alcazar v. Nissan N. Am., Inc.*, No. 23-cv-01951-JD, 2023 WL 4706167, at *2 (N.D. Cal. July 24, 2023) ("[R]emovability is determined from the pleadings and not the defendant's subjective knowledge."); *Diaz v. Gen. Motors LLC*, No. 25-cv-02208-KK (MBKX), 2025 WL 3034060, at *3 (C.D. Cal. Oct. 30, 2025) ("[T]he fact that Plaintiff filed an unlimited civil case in state court did not indicate to Defendant the amount in controversy exceeded $75,000."); *Bateman v. Gen. Motors LLC*, No. 25-cv-02696-DFM, 2026 WL 412521, at *4 (C.D. Cal. Feb. 12, 2026) ("[W]hile the Sales Agreement may have made it *likely* that the amount in controversy requirement was met, 'likely' is not 'unequivocally clear and certain.'" (citation omitted)).

### b. The Sales Agreement Did Not Trigger § 1446(b)(3)

If a case is not removable based on the initial pleading, it may be removed within thirty days of receiving a paper from which it may be ascertained for the first time that the action is removable. *See* 28 U.S.C. § 1446(b)(3). The second thirty-day window is triggered when a case

United States District Court
Northern District of California

4

is "rendered removable by virtue of a change in the parties or other circumstance revealed in a newly-filed 'paper' . . . ." *Harris*, 425 F.3d at 694. This "other paper" must establish that removability is "unequivocally clear and certain." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1094 (9th Cir. 2021). "Applying the 'unequivocally clear and certain' standard, an . . . other paper must make a ground for removal unequivocally clear and certain before the removal clock begins under the second pathway of § 1446(b)(3)." *Dietrich*, 14 F.4th at 1095. While GM is not required to "engage in guesswork" to determine the amount in controversy, this standard "requires a defendant to apply a reasonable amount of intelligence in ascertaining removability." *Kuxhausen*, 707 F.3d at 1140.

Mr. McMillen relies on the phrase "may first be ascertained" to contend that the sales agreement made removal ascertainable on November 7, 2025. *See* Pl. Supp. at 2. Mr. McMillen further argues that "[c]ourts assessing Song-Beverly amount in controversy routinely use the total cash price shown on a [RISC] because that figure excludes finance charges altogether." *Id.* (citing *Messih v. Mercedes-Benz USA, LLC*, No. 21-cv-03032-WHO, 2021 WL 2588977, at *4 (N.D. Cal. June 24, 2021); *Luna v. FCA US LLC*, No. 21-cv-01230-LHK, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 20, 2021)). This argument is misplaced, as the courts in the cases cited by Mr. McMillen were analyzing whether the defendant there had established by a preponderance of evidence that the amount in controversy exceeded $75,000, not whether a particular paper triggered the thirty-day removal window. *See Messih*, 2021 WL 2588977, at *4; *Luna* 2021 WL 4893567, at *7. Simply put, the issue whether a defendant can rely on the sales agreement to establish the jurisdictional threshold is different than whether that same sales agreement triggered § 1446(b)(3). *See Kuxhausen*, 707 F.3d at 1141 n.3 ("[W]hether a defendant can establish that federal jurisdiction exists and the question of when the thirty-day time period begins are not two sides of the same coin.").

In response to the Court's request for supplemental briefing to address an apparent split of authority regarding whether disclosure of the sales agreement alone is sufficient to trigger the 30-day period, the Parties have submitted arguments on both sides. In their briefs, the Parties identify

United States District Court
Northern District of California

United States District Court
Northern District of California

district court decisions in this Circuit that reached different conclusions as to whether disclosure of the sales agreement triggers the removal period.

In his supplemental brief, Mr. McMillen invokes *Galaviz v. General Motors, LLC*, No. 25-cv-07039-JLS-MAR, 2025 WL 3022665 (C.D. Cal. Oct. 28, 2025), in support of his argument that GM's removal was untimely. *See* Pl. Supp. at 3–4. In *Galaviz*, the district court found that the sales agreement identifying the vehicle's total cash price, together with the repair orders, triggered 28 U.S.C. § 1446(b)(3). *See Galaviz*, 2025 WL 3022665, at *3 ("Defendant had Plaintiff's repair orders and a statement from Plaintiff that he was unaware of other repairs. Such information allows for the calculation of the mileage offset."). The court rejected the removing defendant's argument that unpaid finance charges were necessary to compute actual damages, reasoning that "the damages calculation can use the total cash price in the [sales contract], which excludes finance charges altogether." *Id.* Mr. McMillen accordingly urges, based on *Galaviz*, that GM cannot "ignore" those documents and "wait to remove later based on a refined internal analysis." Pl. Supp. at 3.

In its supplemental brief, GM argues the Court should instead follow the reasoning in *Bateman* and conclude that "the Sales Agreement did not meet the high standard for triggering removability." *Bateman*, 2026 WL 412521, at *4; *see also* Def. Supp. at 1–2. In *Bateman*, the district court found that the "Sales Agreement alone does not meet the high 'unequivocally clear and certain' standard for removability under 28 U.S.C. § 1446(b)(3)," explaining that "while the Sales Agreement may have made it *likely* that the amount in controversy requirement was met, 'likely' is not 'unequivocally clear and certain.'" 2026 WL 412521, at *3–4. This is because, the court reasoned, the agreement "lacked information[] such as mileage necessary to calculate offsets and, therefore, actual damages." *Id.* at *4. GM argues that this is the right result, since "the standards for when a defendant may remove and when a defendant must remove are not the same." Def. Supp. at 1 (cleaned up).

The Court finds that the court in *Bateman* got it right and accordingly declines to follow the approach set forth in *Galaviz*. GM persuasively explains that "[t]he *Galaviz* court considered only whether the evidence presented was 'sufficient for diversity jurisdiction,' concluding that the

United States District Court
Northern District of California

amount in controversy was 'ascertainable' because the court could 'estimate' 'actual damages' from the [sales agreement] alone." Def. Supp. at 2 (citing *Galaviz*, 2025 WL 3022665, at *3. While Mr. McMillen is correct that, unlike *Messih* and *Luna*, *Galaviz* addresses the issue of timeliness under § 1446(b)(3), GM correctly points out that the court in *Galaviz* appears to have conflated the distinct issues whether removal is *possible* and whether removal is *required*. *See* Def. Supp. at 3 ("*Galaviz* confused 'facts sufficient to *allow* removal with facts sufficient to *require* removal within 30 days." (internal quotation marks and citation omitted)). As such, the Court finds the argument that the "total cash price" alone[1] triggers § 1446(b)(3) unpersuasive.

Mr. McMillen's attempts to distinguish *Bateman* are unpersuasive. While he argues that *Bateman* involved the federal Magnuson-Moss Warranty Act rather than the Song-Beverly Act, Pl. Supp. at 4, he fails to explain why this distinction matters, especially since the court in *Bateman* specified that "the calculation of damages sought under Plaintiff's Song-Beverly Act claims may be similarly applied to establish the amount in controversy for the MMWA claim." 2026 WL 412521, at *4. The Court finds similarly unpersuasive Mr. McMillen's suggestion that *Bateman* is distinguishable because "the November 7 contract here disclosed both total sale price and total cash price, plus the line items GM later invoked as offsets." Pl. Supp. at 4. The only offset that was calculable based upon the sales agreement was the optional third-party contracts. *See* Opp. at 8. As in *Bateman*, the sales agreement here lacked information that would make the amount in controversy sufficiently unambiguous for removability purposes, such as the mileage offset (reflected in the repair records) and payoff history (reflected in the loan payoff letter). *See* Kramer Decl. ¶¶ 3–4.

Under the Song-Beverly Act, the purchaser of a vehicle may obtain restitution equal to "the purchase price paid by the buyer, less that amount directly attributable to use by the buyer." Cal. Civ. Code § 1793.2(d)(1). Additionally, "a plaintiff seeking restitution for a motor vehicle is

---

[1] In *Galaviz*, the "June Disclosures" which effectively triggered § 1446(b)(3) included both the sales agreement and repair orders. 2025 WL 3022665, at *3–4 ("Defendant received the Subject Vehicle's [sales agreement], which included its total cash price, and Plaintiff's repair orders on June 23, 2025, thirty-seven days before removal."). Here, the repair orders and loan payoff letter were not provided to GM by Mr. McMillen as of November 7, 2025.

entitled to the actual purchase price after deducting a mileage offset, payments for optional services and equipment, negative equity, noncash credits, and unpaid financing." *Porter v. Gen. Motors, LLC*, No. 25-cv-07971-RFL, 2026 WL 25958, at *3 (N.D. Cal. Jan. 5, 2026) (citing Cal. Civ. Code § 1793.2(d)(2)(C); Cal. Civ. Proc. Code § 871.27(b)–(d), (f)).  In light of these statutory offsets, the Vehicle's sales agreement alone did not trigger removal under the "unequivocally clear and certain standard." *Dietrich*, 14 F.4th at 1095; *see also Bateman*, 2026 WL 412521, at *4 ("Though the Sales agreement contained information relevant to calculating the amount in controversy, the Sales agreement, standing alone, lacked information—such as mileage necessary to calculate offsets and, therefore, actual damages—and thus did not make it "unequivocally clear and certain" that the case was removable."); *Stewart v. Gen. Motors LLC*, No. 25-cv-07153-SPG-MAA, 2025 WL 2848991, at *4 (C.D. Cal. Oct. 7, 2025) ("Plaintiffs disclosed the purchase price of the vehicle, [but] they did not provide information about the vehicle's 'payoff history' or the number of miles driven . . . .  Defendant therefore lacked information needed to calculate the available damages.").

Here, GM received the loan payoff letter on December 2, 2025, but Mr. McMillen did not produce the repair records necessary to calculate the mileage offset.  *See* Kramer Decl. ¶¶ 3–4. The only apparent "paper[s]" that could trigger the second removal period under § 1446(b)(3) are the Sales agreement (produced on November 7, 2025) together with the loan payoff letter (produced on December 2, 2025).  *See Valentin v. Gen. Motors LLC*, No. 25-cv-10342-NW, 2026 WL 836347, at *3 (N.D. Cal. Mar. 26, 2026).  GM removed Mr. McMillen's complaint on January 2, 2026, which was within the 30-day period of receiving the loan payoff letter, on December 2, 2025.

\*   \*   \*

Because neither of the first two removal periods expired prior to removal, nor had one year elapsed since this case began, GM timely removed Mr. McMillen's complaint based on its own information.  *See Roth*, 720 F.3d at 1125–26 ("We conclude that §§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines . . . .").

8

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED THAT: the motion is DENIED. This order terminates ECF No. 16.

**IT IS SO ORDERED.**

Dated:  April 27, 2026

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

9